IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

M2M SOLUTIONS LLC,                      :
                                        :
                    Plaintiff,          :
                                        :
        v.                              :
                                        :   Civil Action No. 12-30-RGA
SIERRA WIRELESS AMERICA, INC. and       :
SIERRA WIRELESS, INC.,                  :
                                        :
                    Defendants.         :

## MEMORANDUM OPINION

Richard D. Kirk, Esq., Stephen B. Brauerman, Esq., Vanessa R. Tiradentes, Esq., Sara E. Bussiere, Esq., BAYARD, P.A., Wilmington, DE; Marc N. Henschke, Esq., FOLEY & LARDNER LLP, Boston, MA; Jeffrey N. Costakos, Esq., Kadie Jelenchick, Esq., FOLEY & LARDNER LLP, Milwaukee, WI; Jason J. Keener, Esq., Jeffrey J. Mikrut, Esq., FOLEY & LARDNER LLP, Chicago, IL.

Attorneys for Plaintiff M2M Solutions LLC.

Thomas C. Grimm, Esq., Jeremy A. Tigan, Esq., MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Robert E. Krebs, Esq., Jennifer Hayes, Esq., Christopher M. Mooney, Esq., NIXON PEABODY LLP, Palo Alto, CA; Ronald F. Lopez, Esq., NIXON PEABODY LLP, San Francisco, CA.

Attorneys for Defendants Sierra Wireless America, Inc. and Sierra Wireless, Inc.

March **3**, 2016

ANDREWS, U.S. DISTRICT JUDGE:

Presently before the Court are two summary judgment motions: Defendants' Motion for Summary Judgment of Invalidity (D.I. 181) and Defendants' Motion for Summary Judgment of Non-Infringement (D.I. 185). The motions are fully briefed. (D.I. 182, 186, 205, 207, 216, 217).[1] For the reasons that follow, I will deny both motions in their entirety.

## I.     BACKGROUND

On January 13, 2012, Plaintiff M2M Solutions LLC filed five related patent infringement actions asserting infringement of U.S. Patent Nos. 8,094,010 ("the '010 patent") and 7,583,197 ("the '197 patent"). The Court held a *Markman* hearing, after which it invalidated the '197 patent and construed several claim terms in the '010 patent. (D.I. 92). Subsequently, in a Memorandum Order deciding multiple defendants' joint motion for reconsideration of the Court's claim construction order, the Court addressed certain indefiniteness arguments that Defendants raise again in their current invalidity motion. (D.I. 215). The Court also issued a Memorandum Opinion on summary judgment motions in Plaintiff's related case against Telit (the "Telit SJ opinion"), which is relevant to certain issues raised here. (C.A. No. 12-33-RGA, D.I. 247).

The '010 patent claims a "programmable communicator device" that is capable of receiving transmissions, authenticating them using a particular form of coded number authentication, and storing numbers from authenticated transmissions in a list of permitted callers. ('010 patent, abstract & claim 1). The patent further contemplates a device that is remotely programmable and that allows for remote data monitoring, "which can be used to relay

---

[1] Unless otherwise specifically noted, all references to the docket refer to Civil Action No. 12-30-RGA.

information about the status of a remote piece of technical equipment such as a vending machine." (*Id.* col. 3, ll. 43–47; *id.* col. 4, ll. 3–7; *id.* col. 7, ll. 24–30).

## II.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989).  A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." FED. R. CIV. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable

inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247–49. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

## III.    DISCUSSION

### A.    Defendants' Motion for Summary Judgment of Invalidity (D.I. 181)

Defendants' Motion for Summary Judgment of Invalidity raises three issues. First, Defendants argue that the '010 patent is invalid for failure to meet the written description and enablement requirements of 35 U.S.C. § 112. (D.I. 182 at 7–11). Second, Defendants argue that the '010 patent is invalid as indefinite because the processing module claim limitation is an improper hybrid claim, claiming both an apparatus and method steps. (*Id.* at 11–14). Third, Defendants argue that the '010 patent is invalid for containing means-plus-function claim terms without sufficient corresponding structure. (*Id.* at 14–19).

#### 1.    Written Description and Enablement

The written description requirement contained in 35 U.S.C. § 112, ¶ 1 requires that the specification "clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Ariad Pharm., Inc., v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) (alteration in original) (internal quotation marks omitted). "In other words, the test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Id.* The written description inquiry is a question of fact. *See id.* Although

4

it is a question of fact, "[c]ompliance with the written description requirement . . . is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008). "A party must prove invalidity for lack of written description by clear and convincing evidence." *Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 682 (Fed. Cir. 2015).

The enablement requirement, considered a separate and distinct requirement contained in 35 U.S.C. § 112, ¶ 1, assesses whether "one skilled in the art, after reading the specification, could practice the claimed invention without undue experimentation." *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 999 (Fed. Cir. 2008). Because the enablement inquiry takes into account what is known to one skilled in the art, the Federal Circuit has "repeatedly explained that a patent applicant does not need to include in the specification that which is already known to and available to one of ordinary skill in the art." *Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1156 (Fed. Cir. 2004). "Enablement is a legal question based on underlying factual determinations." *Vasudevan*, 782 F.3d at 684. Factors considered in assessing the enablement requirement include:

> (1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims.

*In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988). "A party must prove invalidity for lack of enablement by clear and convincing evidence." *Vasudevan*, 782 F.3d at 684.

Defendants argue that the "programmable interface" limitation does not meet the written description and enablement requirements. Defendants essentially make their written description and enablement arguments simultaneously, and do not meaningfully differentiate between the two requirements. (D.I. 182 at 7–11). Accordingly, I consider them jointly here. First, relying

entirely on attorney argument, Defendants assert that the claims of the '010 patent are not

adequately described or enabled because "not a single example of an interface or port is

disclosed in the specification, let alone one that could be directly programmed." (*Id.* at 7–8).

Second, again only providing attorney argument, Defendants contend that the specification does

not provide any written description support for the "programmable interface" that performs the

claimed function of "establishing a communication link with at least one monitored technical

device." (*Id.* at 8–9).   Lastly, relying on the expert report of their technical expert, Dr. Kevin J.

Negus, Defendants argue that the requirement in dependent claims 2 and 54 that the

programmable interface be programmed by wireless transmissions is not described or enabled.

(*Id.* at 10–11 (citing D.I. 184 at ¶¶ 4–5)).

Plaintiff, on the other hand, responds to these arguments with citations to the expert

report of its validity expert, Dr. Alan Konchitsky.  (D.I. 207 at 8–11).  Plaintiff notes Dr.

Konchitsky's conclusion, which he makes by citing to numerous portions of the '010 patent, that

the specification "provide[s] adequate written description of an interface that was directly

programmable and capable of being used for communicating with a monitored technical

device . . . ."  (D.I. 208-2 at 9–10, ¶¶ 910–11).  Dr. Konchitsky points out a particular portion of

the specification that describes the programmable interface connecting to various types of

technical equipment to form a communication link through which data transmissions can be

received.  (*Id.* at 9, ¶ 910 (citing '010 patent, col. 2, ll. 3–8)).  Dr. Konchitsky opines that the

specification adequately describes the programmable nature of the interface, because, "A

POSITA would have recognized that a data request from a remote monitoring device would have

constituted a wireless programming instruction to send data that the 'programmable interface'

could have accepted and executed."  (*Id.* at 12, ¶ 916 (citing '010 patent, col. 8, ll. 58–63)).

Further, with regard to enablement, Dr. Konchitsky opined that "[t]he types of hardware

interfaces described in the '010 specification for connecting two electrical hardware devices

together and facilitating data transfer between them were well known in the prior art." (*Id.* at 10,

¶ 912).  Accordingly, Dr. Konchitsky concludes that the specification conveys a sufficient

disclosure to allow a POSITA to practice the invention without undue experimentation. (*Id.*).

      Most of Defendants' arguments, while purporting to address the written description and

enablement requirements simultaneously, do not meaningfully address the enablement

requirement.  The arguments fail to mention any of the relevant *Wands* factors.  Plaintiff's

written description arguments, supported by the expert report of Dr. Alan Konchitsky and his

numerous citations to the patent, raise genuine issues of material fact that are not susceptible to

summary judgment.  In fact, with regard to most of their written description arguments,

Defendants cite no expert testimony, relying instead on pure attorney argument.  Yet the written

description inquiry is a fact question, viewed from the perspective of a person of ordinary skill in

the art, and attorney arguments are not facts.  These conclusory arguments, unsupported by

expert opinion about what a person of skill in the art would understand and directly contradicted

by considerable expert testimony, do not meet Defendants' considerable burden of establishing

invalidity for lack of written description by clear and convincing evidence. *See Vasudevan*, 782

F.3d at 681.  Where Defendants do actually cite expert testimony, solely with regard to claims 2

and 54, that opinion is rebutted by Plaintiff's expert, Dr. Konchitsky, creating a factual dispute

for a fact finder to assess.  Accordingly, based on the evidence presented, I cannot conclude that

a reasonable jury would be unable to find that the '010 patent meets the written description

requirement.

Likewise, Defendants' failure to reference the enablement standard with any specificity or to otherwise make specific enablement arguments provides grounds to find that this argument has been waived. Plaintiff offers the expert opinion of Dr. Konchitsky in support of its argument that the '010 patent's disclosure would allow a POSITA to practice the invention without undue experimentation. (D.I. 208-2 at 10, ¶ 912). Defendants offer nothing more than vague references to the enablement standard, without any discussion of the state of the art, the relative skill and understanding of a POSITA, the amount of experimentation that would be necessary, or any other relevant *Wands* factors. Defendants' cursory argument plainly fails to establish by clear and convincing evidence the underlying facts necessary to determine that the '010 patent is invalid for lack of enablement. *See Vasudevan*, 782 F.3d at 684. Accordingly, I will deny Defendants' motion for summary judgment of invalidity for lack of written description and enablement.

### 2. Indefiniteness Under § 112, ¶2 for Improper Hybrid Claims

In *IPXL Holding*, the Federal Circuit held that when a claim "recites both a system and the method for using that system, it does not apprise a person of ordinary skill in the art of its scope, and [] is therefore [indefinite] under section 112, paragraph 2." *IPXL Holding, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005). Subsequent decisions by the Federal Circuit upheld this rule where, as in *IPXL*, the claim language expressly required both an apparatus and that a user actually use the apparatus. *See H-W Tech., L.C. v. Overstock.com, Inc.*, 758 F.3d 1329, 1336 (Fed. Cir. 2014) (applying this principle to claim language stating "'wherein said user completes . . .' and 'wherein said user selects . . . .'" (alterations in original)); *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1318 (Fed. Cir. 2011) (applying this principle to claim language stating "'wherein . . . callers digitally enter data' and

'wherein . . . callers provide . . . data'" (alterations in original)).  Numerous district courts have described this rule of law, however, as a narrow one, with the general understanding that "the rule does not apply to claims containing language simply describing a system as well as the capabilities of the claimed system; rather, the rule applies to claims describing a system that also require the user of the recited system to take specific action." *Bayer Pharma AG v. Watson Labs., Inc.*, 2014 WL 4954617, at *6 (D. Del. Sept. 30, 2014) (citing various district court opinions in accord with this position).

Defendants argue that "Claims 1 and 52 [of the '010 patent] are invalid as indefinite because they impermissibly combine statutory classes of invention—apparatus and method—and thus one of ordinary skill in the art cannot ascertain the scope of the claims with reasonable certainty." (D.I. 182 at 12–13).  Specifically, Defendants pinpoint language in the "processing module" claim limitation within those claims: "claims 1 and 52 combine a 'processing module for authenticating' a transmission with the requirement that the processing module actually authenticate the transmission: 'wherein the processing module authenticates.'" (*Id.* at 13). According to Defendants, "[t]he difference in verb usage illustrates that the step of requiring the processing module to authenticate the transmission is actually required in the second limitation." (*Id.*).  In essence, Defendants contend that it is unclear to manufacturers and sellers of products whether they infringe the '010 patent merely by making and selling a product with the capability of authenticating incoming transmissions or if the product must also actually perform the method step of authenticating an incoming transmission in order to infringe.  (*Id.* at 13–14).  Plaintiff, on the other hand, argues that the "processing module" claim limitation is drafted in a manner that describes an apparatus with certain functional capability.  (D.I. 207 at 21).[2]  Plaintiff also argues

---

[2] Plaintiff supports its assertions—that a POSITA would understand that the claims of the '010 patent are drawn to functional capability and that the '010 patent provides adequate notice that infringement occurs when a product is

9

that Defendants misread the narrow *IPXL* line of cases and insist that the claim language here is not analogous to the claim language at issue in *IPXL* and its progeny. (*Id.* at 22).

In the Telit SJ opinion, I held that the '010 patent, including the "processing module" limitation, claimed an apparatus with certain functional capability. (C.A. No. 12-33-RGA, D.I. 247 at 7–14). In that related case, Telit made indefiniteness arguments that are nearly identical to those raised by Defendants here, but that focused on different claim language. (*Id.* at 30–32). In the Telit SJ opinion, I first noted that Telit's indefiniteness arguments relied on the same premise as its unsuccessful non-infringement arguments: "that claim 1 of the '010 patent requires a user to perform method steps." (*Id.* at 32). I concluded, "Because I have already held that this claim language properly claims functional capability, as opposed to method steps, Defendants' indefiniteness argument merits no relief." (*Id.*). Second, I held that the *IPXL* line of cases did not support Defendants' argument, because the claim language at issue in the '010 patent does not specifically "'require the user of the recited system to take specific action.'" (*Id.* (quoting *Bayer Pharma*, 2014 WL 4954617, at *6)). The reasoning of the Telit SJ opinion applies with equal force here, as Defendants are asserting that the same claim limitation in the same patent is indefinite under the same legal theory.

Defendants argue, however, that the Telit SJ opinion should not impact their indefiniteness argument here, because Telit argued that different language (within the same claim limitation) created the requirement that method steps be performed. (D.I. 223 at 2). Specifically, Defendants note that Telit relied on the "sending" and "receiving" words in the processing module limitation, while Defendants here assert that "the 'authenticates' language

---

sold with this functional capability—with citation to the expert opinion of Dr. Alan Konchitsky. (D.I. 207 at 21 (citing D.I. 208-2 at 14–15, ¶ 933)). Defendants do not cite expert testimony in support of their indefiniteness argument.

that appears in the wherein clause provides the basis for [their] position that the claim recites a hybrid mixture of apparatus structure and method steps." (*Id.*).

Despite the fact that I did not explicitly consider an argument based on the "authenticating" language, I conclude that the rationale and conclusions of the Telit SJ Opinion are applicable and dispositive as to Defendants' indefiniteness arguments here. First, I expressly held in the Telit SJ opinion that "the additional language following the processing module claim limitation does not require that method steps be performed. It simply provides a description of how the claimed function is achieved in the context of the invention." (C.A. No. 12-33-RGA, D.I. 247 at 12). Thus, I unambiguously held that this entire claim limitation does not require the performance of method steps. The "authenticating" claim language that Defendants now point to does not convince me otherwise. Second, the narrow *IPXL* line of cases does not help Defendants' cause with this different claim language, because the claim language does not mention a user at all or otherwise require that a user take specific action. *See Bayer Pharma*, 2014 WL 4954617, at *6. Instead, this "wherein" clause describes how the processing module itself performs its recited authenticating function in the context of the invention. ('010 patent, claim 1). Accordingly, Defendants' indefiniteness arguments based on hybrid claiming do not warrant summary judgment.

### 3. Indefiniteness Under § 112, ¶ 6 for Means-Plus-Function Terms Without Sufficient Corresponding Structure

Defendants argue that the "processing module," "programmable interface," and "memory module" claim limitations are all means-plus-function claim limitations that are indefinite because the '010 patent specification does not provide sufficient corresponding structure. (D.I. 182 at 14–19). With regard to the processing module and programmable interface claim terms, Defendants made these arguments during claim construction, and I rejected them, noting the

11

absence of the word "means" in any of the claim limitations and the "strong presumption" that §

112, ¶ 6 did not apply in the absence of the word means.  (D.I. 92 at 10–13).  Subsequently, in

*Williamson v. Citrix Online, LLC*, the Federal Circuit overruled prior precedent by deciding to

"abandon characterizing as 'strong' the presumption that a limitation lacking the words 'means'

is not subject to § 112, para. 6."  *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed.

Cir. 2015) (en banc).  Defendants, including the other defendants in Plaintiff's related cases, then

moved for reconsideration, asserting *Williamson* as an intervening change in the law that

rendered these claim limitations mean-plus-functions terms subject to § 112, ¶ 6.  (D.I. 180).

After holding oral argument, I rejected Defendants' renewed arguments that these two terms

were subject to § 112, ¶ 6, even after *Williamson*.  I held, "While the presumption against the

application of § 112, ¶ 6 is no longer a 'strong' one after *Williamson*, it nonetheless remains a

presumption that Defendants must affirmatively overcome."  (D.I. 215 at 4 (citing *Williamson*,

792 F.3d at 1349)).  I ultimately held that Defendants did not overcome that presumption.  (*Id.*).

Defendants later conceded that this Court's decision on the motion for reconsideration is

dispositive as to their arguments here, at least with regard to the processing module and

programmable interface terms.  (D.I. 223 at 1).  Accordingly, these arguments provide

Defendants no grounds for relief.

       In order to overcome the presumption that § 112, ¶6 does not apply to claim terms not

including the word "means," Defendants must "demonstrate[] that the claim term fails to recite

sufficiently definite structure or else recites function without reciting sufficient structure for

performing that function."  *Williamson*, 792 F.3d at 1349.  This inquiry is made from the

perspective of a person of ordinary skill in the art.  *See id.*  With regard to the remaining

"memory module" limitation, Defendants argue, without citation to any expert testimony, that

because the claim employs only "high level functional terms," it "does not recite even an indication of how the numbers will be stored 'as one or more permitted callers.'" (D.I. 182 at 16). Thus, according to Defendants, "the now weakened presumption is rebutted, and the module limitations are subject to § 112 ¶ 6." (*Id.*). Plaintiff raises a number of alleged deficiencies with Defendants' argument, including that the argument was never previously raised as to this claim limitation and makes no reference to the perspective of a POSITA, as the standard requires. (D.I. 207 at 23–25).

The entire claim limitation at issue here reads:

> a memory module for storing the at least one telephone number or IP address from the authenticated transmission as one of one or more permitted callers if the processing module authenticates the at least one transmission by determining that the at least one transmission includes the coded number . . . .

('010 patent, claim 1). "[I]f a limitation recites a term with a known structural meaning, or recites either a known or generic term with a sufficient description of its operation, the presumption against means-plus-function claiming remains intact." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1300 (Fed. Cir. 2014). On its face, the entire claim limitation seems to convey a sufficient description of its operation. The memory module stores numbers in a list of permitted callers if the processing module authenticates them using coded number authentication. Moreover, the only reference to the perspective of a POSITA that either party points out in the briefing is a citation to the expert report of Defendants' technical expert, Dr. Negus, who opines that:

> [P]rior art references describing local storage of access control lists within programmable wireless data modules that disclosed the limitation of the 'memory module for storing' claim element as well as the incoming and outgoing permitted caller limitations . . . were well known to the POSITA at or before the time of [Plaintiff's] alleged priority date.

(D.I. 208-4 at 11, ¶ 173). While not opining directly as to indefiniteness here, the implication of Dr. Negus's testimony is clear. A POSITA would understand the '010 patent's memory module as referring to access control lists, which were well known in the art. Thus, it appears that the memory module claim limitation recites a function, but recites sufficient structure for performing that function from the perspective of a POSITA. *See Williamson*, 792 F.3d at 1349.

Even in the absence of the substantive considerations discussed above, I would still conclude that Defendants' two sentences of attorney argument with regard to the memory module claim limitation wholly fail to rebut the presumption that § 112, ¶ 6 does not apply in the absence of the word means. While the presumption against the application of §112, ¶ 6 is no longer a "strong" one after *Williamson*, it nonetheless remains a presumption that Defendants must affirmatively overcome. *See Williamson*, 792 F.3d at 1349. Even under the presumption as understood after *Williamson*, Defendants do nothing to meet their burden of demonstrating that "the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *Williamson*, 792 F.3d at 1349 (internal quotation marks omitted). Instead, Defendants simply offer conclusory attorney statements that the claim limitation does not provide an indication of how to store numbers of permitted callers. Accordingly, I will deny Defendants' motion for summary judgment of invalidity on indefiniteness grounds.

**B.     Defendants' Motion for Summary Judgment of Non-Infringement (D.I. 185)**

A patent is infringed when a person "without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent . . . ." 35 U.S.C. § 271(a). A two-step analysis is employed in making an infringement determination. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517

U.S. 370 (1996). First, the court must construe the asserted claims to ascertain their meaning and scope. *See id.* Second, the trier of fact must then compare the properly construed claims with the accused infringing product. *See id.* This second step is a question of fact. *See Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998).

"Literal infringement of a claim exists when every limitation recited in the claim is found in the accused device." *Kahn v. Gen. Motors Corp.*, 135 F.3d 1472, 1477 (Fed. Cir. 1998). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). If an accused product does not infringe an independent claim, it also does not infringe any claim depending thereon. *See Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989). The patent owner has the burden of proving infringement and must meet its burden by a preponderance of the evidence. *See SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988). When an accused infringer moves for summary judgment of non-infringement, such relief may be granted only if at least one limitation of the claim in question does not read on an element of the accused product, either literally or under the doctrine of equivalents. *See Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1376 (Fed. Cir. 2005); *see also TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002) ("Summary judgment of noninfringement is . . . appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, because such failure will render all other facts immaterial."). "Thus, summary judgment of non-infringement can only be granted if, after viewing the alleged facts in the light most favorable to the non-movant, there is no genuine issue as to whether" the accused product is covered by the claims (as construed by the court). *Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999).

15

### 1.   The "Programmable Interface" Claim Limitation

Defendants argue that they are entitled to summary judgment of non-infringement

because the accused products are not *directly* programmable, as stated in my construction of

"programmable interface," but instead are only indirectly programmable. (D.I. 186 at 11).

Specifically, Defendants assert that AT commands do not directly program the accused

interfaces, but instead first go to an intermediary, a microprocessor, which itself processes and

executes the AT commands before sending control signals that configure basic settings on the

accused interfaces. (*Id.*). Thus, according to Defendants, "in every instance, the microprocessor

receives the AT command and processes and executes the command before sending 'control

signals' to the Accused Interfaces," meaning "the AT commands are not *directly* received by the

Accused Interfaces." (*Id.* at 12). Defendants cite the expert report and deposition testimony of

Plaintiff's infringement expert, Dr. Ray Nettleton, to make this argument. (*Id.* at 11–12 (citing

D.I. 187-2 at 35–37, ¶¶ 123–30; *id.* at 50–52, ¶¶ 161–65; *id.* at 54–57, ¶¶ 170–74; *id.* at 91, Tr. p.

47)). Based on Dr. Nettleton's testimony, Defendants conclude that "it is undisputed that the

accused AT commands at best only indirectly change settings on the control registers as a by-

product of processing and executing AT commands on a separate microprocessor." (*Id.* at 12).

Plaintiff offers three reasons why Defendants' arguments are not amenable to summary

judgment of non-infringement. First, Plaintiff contends that Dr. Nettleton asserted "four

principal stand-alone infringement theories . . . for establishing how the Accused Interfaces in the

Accused Products are 'able to be directly programmed," yet Defendants' motion only addresses

one of those four theories. (D.I. 205 at 9–13, 17–20). Thus, Plaintiff argues that, even assuming

Defendants' sole argument as to one of those infringement theories, involving AT commands,

were correct, there are still disputed issues of material fact because the other three ways Dr.

Nettleton suggests this limitation is met have not been addressed. (*Id.* at 18). Second, Plaintiff argues that Defendants' "non-infringement argument is premised upon a misreading of the word 'directly' that appears in the Court's construction as somehow requiring that the claimed 'programmable interface' would need to be programmed by way of a particular type of programming technique in which it would 'directly receive' any putative programming instructions." (*Id.* at 21). Third, Plaintiff argues that even if Defendants' characterization of the Court's claim construction were accurate, there would still be disputed issues of material fact as to whether the accused interfaces themselves directly receive the AT commands, because Dr. Nettleton views certain firmware components of the microprocessor as being a "constituent part[] of the Accused Interfaces . . . ." (*Id.* at 22 (citing D.I. 206-2 at 34, ¶ 119; *id.* at 55, ¶¶ 171–73)).

I conclude that Defendants have failed to establish their entitlement to summary judgment of non-infringement as to this claim limitation. First, Defendants entirely neglect to address three of the four ways that Dr. Nettleton describes the accused products meeting the programmable interface limitation. For instance, Dr. Nettleton opines, without reference to AT commands, that the accused interfaces are "'able to be directly programmed' within the meaning of the Court's claim construction . . . because each is able to be configured by control signals sent by an ARM microprocessor that cause designated parameter values to be written into its control registers." (D.I. 206-2 at 33, ¶ 116). He also describes two other ways this limitation is met, where programming occurs via control signals sent by a reset controller or through API function calls, which Defendants do not address. (*Id.* at 33–34, ¶¶ 118, 120). Citing nothing, Defendants assert that their arguments with respect to AT commands apply equally to Dr. Nettleton's other infringement theories, because they all involve "caus[ing] the microprocessor

17

to change settings on the control registers." (D.I. 186 at 13; D.I. 217 at 3–4).  Defendants'
cursory attorney argument that all of Dr. Nettleton's infringement theories are the same does not
provide a sufficient basis to prevent Plaintiff from presenting these infringement theories to a
factfinder.

Second, my claim construction did not intend to distinguish between programming
commands that pass through an intermediary versus those that go straight from the origination
point to the interface.  There is nothing in the intrinsic record of the '010 patent that concerns
itself with where programming commands originate or whether they go through an
intermediary—versus traveling directly—before reaching the programmable interface.
Defendants offer no contrary evidence, aside from arguing that their position rests on their
reading of the plain meaning of the word directly.[3]  Furthermore, neither party argued for the
inclusion of the word "directly" in their proposed constructions.  (D.I. 92 at 10–12; D.I. 54 at 42–
55).  Instead, I added the word "directly" to my construction in response to concerns raised by
Defendants at the *Markman* hearing, suggesting that the construction needed to clarify that the
interface itself is what needs to be programmable, as opposed to merely having an overarching
programmable device with a non-programmable interface as a component.  (D.I. 61 at 125–28).[4]
Thus, because Defendants interpret the word "directly" in a manner that is inconsistent with both
the Court's intent and the teachings of the '010 patent, their arguments based on this reading of

---

[3] Defendants make no effort to square this reading of "directly" with the teaching of the '010 patent specification.
Instead, they criticize Plaintiff for doing so by concluding that "Dr. Negus actually declined to redefine 'directly'
which Dr. Negus viewed as clear enough." (D.I. 217 at 5 n.3).

[4] At the *Markman* hearing, defense counsel raised concerns that Plaintiff was able to overcome a prior art
reference, the '312 patent/Hayes reference, by arguing that the interface in Hayes was only a basic electrical interface,
while the interface in the '010 patent was novel in that it was programmable.  (D.I. 61 at 125–28).  Accordingly,
defense counsel argued for the Court to clarify that the interface itself needed to be programmable—as opposed to the
claimed programmable communicator device as a whole being programmable—because otherwise Plaintiff would be
able to broaden its infringement contentions to improperly include products falling under the Hayes patent, which
Plaintiff effectively disclaimed during the prosecution of the '010 patent.  (*Id.*).  I subsequently suggested that using
"directly programmed" would allay those concerns.  (*Id.* at 128).

my claim construction merit no relief as a matter of law. For both of the above reasons, Defendants are not entitled to summary judgment of non-infringement as to the "programmable interface" claim term.

### 2. The "Permitted Callers" Claim Term

Defendants argue, citing a draft stipulation between the parties, that Plaintiff admits that Defendants' accused products do not infringe the "permitted callers" limitation of the '010 patent. (D.I. 186 at 15). Accordingly, Defendants ask the Court to grant summary judgment of non-infringement as to the permitted callers limitation based on these "admissions." (*Id.*). Plaintiff argues that no discovery was taken nor expert reports prepared with regard to infringement of this claim term, and therefore the issue is not amenable to summary judgment. (D.I. 205 at 6, 24). Plaintiff points out that this Court allowed the parties to reopen discovery solely as to Defendants' non-infringement arguments with regard to the "programmable interface" term, and directed the parties to stipulate to some sort of judgment on the "permitted callers" term, or otherwise brief the issue. (*Id.*). Indeed, both parties represented to the Court that Defendants' products did not infringe the permitted callers limitation under my claim construction, and I directed them to reach a stipulated judgment if possible. (D.I. 178-1 at 33, Tr. p. 122). This directive is consistent with how I instructed the parties to proceed in Plaintiff's related cases (C.A. No. 12-31-RGA; C.A. No. 12-33-RGA), when the parties indicated that my claim construction was dispositive as to non-infringement of certain claim terms. (D.I. 152 at 3).

It appears that the parties have since failed to reduce this understanding to a stipulation. My position remains the same. I am not going to grant summary judgment of non-infringement of this claim limitation based on a draft agreement between the parties that was never formalized, without any fact and expert discovery having taken place regarding the issue. Accordingly, I will

deny Defendants' motion for summary judgment of non-infringement of the permitted callers limitation.

## IV.   CONCLUSION

For the reasons set forth above, the Court will deny Defendants' Motion for Summary Judgment of Invalidity (D.I. 181) and Defendants' Motion for Summary Judgment of Non-Infringement (D.I. 185).  A separate order, consistent with this Memorandum Opinion, will be entered.